## BATEMAN v. DONOVAN.

### No. 9969.

Circuit Court of Appeals, Ninth Circuit.

Nov. 13, 1942.

Rehearing Denied Jan. 4, 1943.

---

Busha & Greenan, of Great Falls, Mont., for appellant.

James Donovan, of Los Angeles, Cal., and Lowndes Maury, of Butte, Mont., for appellee.

Before GARRECHT and HEALY, Circuit Judges, and BOWEN, District Judge.

GARRECHT, Circuit Judge.

James Donovan, plaintiff-appellee, filed in the District Court of the United States for the District of Montana a complaint in which he alleged breach of contract and asked damages therefor. The court overruled a demurrer, and thereafter appellant, H. W. Bateman, filed his answer, which

was virtually a denial of all that was alleged in the complaint. The matter came on for trial before the court sitting with a jury. At the close of appellee's evidence appellant made a motion for a directed verdict, contending, inter alia, that no contract existed because there was no meeting of the minds of the parties, that appellee had failed to prove any consideration for the alleged contract, and that appellee had failed in proof of any damages. This motion the court denied save as to the ground pertaining to damages. Thereupon appellee requested leave to reopen the case for the purpose of introducing evidence on the question of damages, which request was granted by the court. At the close of all the evidence appellant renewed his motion for directed verdict, which was again denied. The jury returned a verdict in favor of appellee for $3,544, and judgment was entered thereon. Within ten days thereafter appellant submitted a motion for a new trial, which motion the court granted. Subsequently, forty-seven days later, appellee made a motion to vacate this order granting a new trial, and the court, upon consideration of appellee's motion, thereafter set aside said order, and reinstated the verdict and entered judgment thereon.

Bateman has appealed to this court, assigning as error (1) the refusal of the trial court to grant appellant's motion for a directed verdict; (2) the action of the trial court in granting appellee's motion to vacate and set aside its order for a new trial and reinstating the verdict of the jury and the judgment entered thereon. He contends further that the verdict and judgment are contrary to law and to the evidence—that the sum awarded appellee is excessive.

We first narrate the facts of the case as they were adduced at the trial:

In 1925 Donovan, who is a resident of Los Angeles, California, had purchased (together with other acreage not involved here) certain parcels of land located in Teton county, Montana, amounting to a section in all. Half of this section 320 acres, had been leased to Bateman, who resides at Choteau, Teton county, Montana. Bateman had paid the rental for a period including the year 1935. On September 23, 1933, the whole section was sold at foreclosure sale. Early in 1934 Bateman telegraphed Donovan, asking whether he intended to redeem the lands

and offered to purchase Donovan's right of redemption. Donovan responded that he did intend to redeem and inquired of Bateman whether he knew the price at which the lands were sold. Bateman answered that "the sale price on the lands you own in Teton Cou. was $320 subject to redemption", and added: "If it should happen that you do not wish to redeem this property at the period time for redeeming, please let me have a chance to purchase the lands before redemption time is up." Then, on September 4, 1934, Donovan wrote Bateman as follows:

"I am preparing to prevent Lee Ford and his Company from securing title to the Adams Ranch by this foreclosure. I shall proceed under the Frazier-Lempke Act. As the land in Teton County was sold for a mere song I would like to have you redeem that for me and hold it for at least a year and I will pay you 8% interest on the money that you will use in redeeming it. Conditions are such here that it is impossible for me to raise any money on what property I have here and as Ford has not shown a disposition to be fair to me I must appeal to other sources and friends to help protect me. I may have the money before the year is out and as soon as I have it I will forward it to you. You can have the use of the land for such time as you want it for the next few years.

"If you can assist me in this matter wire me, at my expense, on receipt of this letter."

At the same time Donovan also wrote to an employee of his who was residing near Choteau, requesting that he go to see Bateman and learn whether he intended to redeem the section of land. The employee called upon Bateman on September 7, 1934, and advised him that if he was not going to redeem the foreclosed property, other arrangements would have to be made. Appellant declared that he was going to redeem, and on that day wired appellee, "Send quit claim deed to Teton lands I will redeem them". On the same day, upon receipt of the telegram, appellee prepared, signed, and acknowledged a quitclaim deed to the section of land in Teton county, and mailed the same to appellant, who received it in due time but who permitted the period of redemption to expire (September 23, 1934, being the final date) without his having redeemed the property. Later Donovan received from appellant a letter dated September 30, 1934, and read-

ing as follows: "Enclosed you will find deed mailed me sometime ago. I was given to understand that it would only take about $300 to redeem the land. However the entire amount including delinquent taxes was a considerable more than I could use at this time."

On the witness stand appellant testified that he went to the sheriff's office on the last day of the redemption period with the intention of redeeming the property, but that he declined to do so because, in the sheriff's office, he "was told it would take considerably more than the amount of the sale because there were delinquent taxes on the piece of land", and that altogether the amount would be about $800. He stated that he had not known about there being delinquent taxes, and had expected to pay only $320, the sales price of the land at the foreclosure sale.

The 320 acres of the land here involved which had been leased by appellant were located in the center of land owned by him, and thus had a peculiar value to him, as indicated in a letter he wrote to Donovan in 1932, in which he said that: "The Government land in and around this territory is leasing for 10¢ per acre and your land is in our field and has water on same and we are willing to pay the price of $60.-00 per year [approximately twenty cents per acre for the 320 acres]." After the redemption period expired and Donovan's right to redeem had been extinguished, appellant managed to continue in possession of the said 320 acres, and in 1936 he purchased the same from one Otto Wagnild, who, apparently, was the purchaser at the foreclosure sale. At the time of the trial, in 1939, Bateman was still holding the land. However, in this case there is no allegation of fraud—that when Bateman agreed to redeem the property, he was not acting in good faith. As hereinbefore stated, in this action Donovan is seeking to recover damages arising out of the alleged breach of a contract to redeem.

We now consider appellant's contention that the District Court erred in refusing to grant his motion for directed verdict. The grounds which are discussed in his brief, and which were among those urged at the time the motion was made, are that "the evidence failed to show any contract existing between the appellant and appellee: (a) Because there was no meeting of minds; (b) Because no consideration existed to support the contract".

In arguing that there was no meeting of the minds appellant points out that, as shown by the correspondence between him and appellee early in the year 1934, the two of them had contemplated that the cost of redemption should be approximately $325, the sale price of the property at the foreclosure sale, whereas the sheriff told him that some $800 were required in order to redeem, the discrepancy of about $500 being attributed to delinquent taxes. The negotiations between Donovan and appellant do show that they contemplated that the sum to be expended in redeeming the property should be the amount of the foreclosure sale, and Donovan did not make any assertion to the contrary, either in his pleadings or upon the trial. So, rather than that there was no meeting of the minds, appellant is, apparently, endeavoring to show that there was a mutual mistake with regard to an essential phase of the contract and that therefore his nonperformance should be excused. We shall discuss the matter from this standpoint.

To prove the mutual mistake, appellant attempted to establish that the actual redemption price was nearly $800 instead of about $320, by testifying that the sheriff had so informed him, that the sheriff had said that there had been owing on the property back taxes in the approximate sum of $500. This hearsay testimony was admitted without objection. On the other hand, appellee testified that he had paid all taxes and that there were no back taxes. In his instructions to the jury the judge called to their attention the fact that the preliminary negotiations between appellant and appellee indicated that the sum to be advanced by appellant in redeeming the property should be approximately $325, whereas appellant's testimony in regard to the matter was that about $800 were actually required for redemption purposes. The judge then charged the jury to consider the conflicts in the testimony and in arriving at a verdict to reconcile them where possible, and where not, to resolve them by giving to the different evidence the weight they deemed proper. Manifestly, by returning a verdict in favor of Donovan, the jury found against appellant's testimony.

Appellant argues that Donovan's testimony cannot be looked to for purposes of establishing that he had paid the taxes because said testimony had been ruled out by the trial judge. The record does

reveal that the judge made such ruling, stating that to prove payment of the taxes Donovan must produce the tax receipts, which he did not do. Doubtless, the trial judge based his ruling upon the "best-evidence" principle, for he admonished Donovan that he knew he could not "testify to written documents and instruments and give oral testimony in respect to them". It is certain that the evidence was wrongfully excluded: Donovan was not trying to prove the contents of a written instrument; he was testifying to the existence of a fact— the payment of the taxes—which would be a matter within his own knowledge. See Wigmore on Evidence, § 1245, Vol. IV, p. 471; 32 C.J.S., Evidence, § 778, pp. 703, 704; 22 C.J. § 1227, pp. 982-986. The production or non-production of the tax receipts went merely to the matter of proof. So, if in arriving at their verdict, the jury considered this testimony of appellee, it could hardly be held error, particularly since at a later period in the trial plaintiff's testimony to the effect that he had paid the taxes was admitted without objection.

### The Question of Consideration.

As an approach to the question of whether or not there was consideration to support the claimed contract, we shall briefly recount the pertinent facts. In his letter of September 4, 1934, appellee promised Bateman that if he would redeem the lands, he, appellee, would repay the sum so expended plus interest at eight percent, and in addition agreed that if he cared to, Bateman might continue to rent the lands which he was then using. The acceptance is found in the telegram of September 7, 1934, in which Bateman stated, "Send quit claim deed to Teton lands I will redeem them". Appellee did perform the condition precedent by forwarding to Bateman a duly executed and acknowledged quitclaim deed, the purpose of which, undoubtedly, was to provide Bateman with security for the money to be advanced by him.

Appellant attacks the sufficiency of the consideration by claiming that appellee's quitclaim deed was defective. He cites the Montana statutes relative to the dower rights of a wife, and argues that the deed was not "good and sufficient in so far as it affected the title of appellee" because his wife's signature was not affixed to the deed, and that "Therefore, the appellant had a perfect right to refuse to redeem on this ground".

In this contention of appellant we find no merit. He had requested appellee to send his quitclaim deed and appellee did just that. Under Montana law the dower interest of a wife is merely an inchoate right—whether treated as a bare expectancy or as a contingent interest— which does not become consummate until the husband's death. Mathews v. Marsden, 71 Mont. 502, 230 P. 775. A quitclaim deed is one conveying only the right, title, and interest of the grantor in the property described. 8 RCL 926; 16 Am.Jur. 624, §§ 330 et seq. Thus, in the instant case, the instrument was a good and valid deed, sufficient to convey the plaintiff's right to redeem the property (Lynde v. Wakefield, 19 Mont. 23, 47 P. 5), and the fact that it did not serve to convey, and cut off, some possible right of his wife is inconsequential here.

In view of the foregoing discussion the trial court's refusal to grant defendant's motion for a directed verdict was correct. "Issues that depend on the credibility of witnesses, and the effect or weight of evidence, are to be decided by the jury. And in determining a motion of either party for a peremptory instruction, the court assumes that the evidence for the opposing party proves all that it reasonably may be found sufficient to establish, and that from such facts there should be drawn in favor of the latter all the inferences that fairly are deducible from them. * * * Where uncertainty * * * arises from a conflict in the testimony, * * * the question is not one of law but of fact to be settled by the jury. * * *" Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720. "The test as to whether a directed verdict should be granted * * * is whether or not the evidence to support a directed verdict as requested, was so conclusive that the trial court in the exercise of a sound judicial discretion should not sustain a verdict for the opposing party." O'Brien, Manual Fed.App. Proc., 3d ed., p. 15. Here this test was not met.

Appellant also raises an objection as to the amount of the verdict returned by the jury, contending that it is excessive. The testimony as to the value of the property in question varied. When on the stand Donovan claimed the value to be fifteen dollars per acre, but added that he was asking as damages only seven dollars per acre, the price paid by him when

he purchased the land. Being owner of the property, he, although not an expert, was a competent witness for the purpose of expressing his opinion on the question of value. Wigmore on Evidence, § 714, Vol. III, p. 45; 32 C.J.S., Evidence, p. 288, § 545; Rasmussen v. O. E. Lee & Co., 104 Mont. 278, 66 P.2d 119. Other values, testified to by persons qualifying as experts, ranged from fifty cents to three dollars an acre, it being generally agreed that certain arable portions were worth as much as ten dollars an acre. There being 640 acres in all, it is apparent that the $3544 allowed Donovan by the jury came well within the range established by the conflicting testimony, and this is so after making allowance for a deduction of $325, the amount of the sale price at the foreclosure sale, and which, as the jury were instructed, plaintiff was not entitled to recover. The question being a proper one for the jury and their verdict having foundation in the evidence, obviously that verdict cannot be disturbed here on the ground that it is excessive.

## As to the Action of the Trial Court in Setting Aside Its Order Granting a New Trial.

When appellant made his motion for new trial, he accompanied it with an affidavit of the foreman of the jury for the purpose of showing "misconduct" on the part of the jury. The affidavit stated that "in considering the amount of damages to be awarded to the Plaintiff there was considered by the affiant and by the Jury the value of the land involved in the contract in said case, damages for the breach of said contract, the estimated taxes over a period of seven years and interest computed at the rate of six (6) percent for a period of six years", and that "the aggregate amount of these four items so computed by the Jury was agreed to be the sum of $3544.00". In granting appellant's motion for new trial the judge stated in his order, "From the affidavit of the foreman of the jury, submitted in defendant's motion, it clearly appears that the jury was in error in estimating taxes over a period of seven years and adding interest computed at 6% over a period of six years. The court is unable to find any evidence in the record which would justify any such estimate." The judge concluded that appellant's substantial rights had been affected and that it was therefore proper to order a new trial. Appellee, in his motion filed forty-seven days later, attacked the propriety of the trial court's granting of a new trial upon a consideration of the juror's affidavit. In granting this motion of appellee and setting aside the order for a new trial the judge reasoned that there was not presented a proper case in which the affidavit of a juror might be received, on motion for a new trial, for the purpose of impeaching the verdict.

First of all, did the District Court have power to reconsider its order granting a new trial? Without citation of any authorities appellant questions the action of the court. It is true, as pointed out by him, that the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, make no provision for such action, but it is likewise true that they do not forbid it. As illustrating the power of a federal trial court over its decrees and orders, we invite attention to the well-known principle that the court may vacate even final decrees at any time within the term (which principle remains unchanged under the new Rules, National Popsicle Corp. v. Hughes, D.C., 32 F.Supp. 397). But as regards an order granting a new trial after verdict, such order being interlocutory and not final, since it leaves the case undisposed of, and the parties before the court, it may be set aside if erroneously granted, and this may be done even after expiration of the term. Storey v. Storey, D.C., 221 F. 262. See also Longsdorf, Cyc.Fed.Proc., § 1487, Vol. 5, p. 42. The lower court was acting within the scope of its power.

We turn now to the final question on this appeal, which pertains to the alleged error of the court in ultimately declining to grant the motion for a new trial. It is so well established as not to require citation of authority that the order denying a new trial is discretionary with the trial court and may be reviewed only for a clear abuse of authority. So in this connection the matter for our determination is whether the matter set forth in the juror's affidavit was such as to compel the granting of a new trial and whether there was an abuse of discretion in its denial. The general rule is that affidavits of jurors will not be received for purposes of impeaching their verdict. McDonald v. Pless, 1915, 238 U.S. 264, 267-269, 35 S.Ct. 783, 59 L.Ed. 1300; Department of Water and Power v. Anderson, 9 Cir., 1938, 95 F.2d 577, 586; Spokane International R. Co. v.

United States, 9 Cir., 1934, 72 F.2d 440, 443; Brabham v. State of Mississippi, 5 Cir., 1938, 96 F.2d 210, 214; Brennan v. Buddenhagen, D.C.Pa., 1937, 19 F.Supp. 815, 816.

In the McDonald case, supra, 238 U.S. 264, at page 267, 35 S.Ct. at page 784, 59 L.Ed. 1300, the latest instance, it seems, in which the question was squarely presented before the Supreme Court, the general rule was adhered to, the court declaring: " * * * The rule is based upon controlling considerations of a public policy which in these cases chooses the lesser of two evils. When the affidavit of a juror, as to the misconduct of himself or the other members of the jury, is made the basis of a motion for a new trial, the court must choose between redressing the injury of the private litigant and inflicting the public injury which would result if jurors were permitted to testify as to what had happened in the jury room."

Professor Wigmore in his work on Evidence, 3d Ed., § 2348, Vol. III, p. 666, reasons that the basic, underlying principle of this general rule is the parol evidence rule. He states: "The jurors' deliberations during retirement, their expressions, arguments, motives, and beliefs, represent that state of mind which must precede every legal act and is in itself of no jural consequence. The verdict, as finally agreed upon and pronounced in court by the jurors, must be taken as the sole embodiment of the jury's act. Hence it stands, irrespective of what led up to it in the privacy of the jury-room,—precisely as the prior negotiations of the parties to a contract disappear from legal consideration when once the final agreement is reduced to writing and signed. * * *"

■ As pointed out by Mr. Wigmore, many cases have recognized that in some instances affidavits and testimony of jurors may properly be admitted, such as, for the purpose of correcting a clerical mistake in the jury's uttered verdict or for the purpose of avoiding the verdict because of irregularities of conduct, among which are the acts of intoxication, separation, private view, consultation of witness or party, acceptance of bribes, and reading of illegal documents.[1] Ibid, §§ 2348-2356, Vol. VIII, pp. 666-712; see also Longsdorf, Cyc.Fed. Proc., § 1485, Vol. 5, pp. 35, 36.[2]

■ In the instant case appellant alleges "misconduct" upon the part of the jury. From the content of the juror's affidavit, the consideration accorded it by the District Court, and appellant's argument as detailed in his brief, it is apparent that the particular "misconduct" endeavored to be established is that there was mistake of the evidence and misapprehension of the law by the jury. In view of the facts as here presented a very apt statement of the law is the following: " * * * the general rule is, that affidavits of jurors will not be received to prove any mistake of the evidence or misapprehension of the law, on the part of the jury. * * * The verdict, in which they all concur, must be the best evidence of their belief, both as to the fact and the law, and therefore must be taken to be conclusive. * * *" Murdock v. Sumner, 39 Mass. 156, 22 Pick. 156, 157.

The rule as we have stated it is also that which prevails in Montana, in which state this action arose. Cf. § 9397, Rev.Codes Mont., 1935; Hough v. Shishkowsky, 1935, 99 Mont. 28, 43 P.2d 247.

The case of Mattox v. United States, 1892, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917, relied upon by appellant, held that a juror may testify as to the existence of any extraneous influence, although not as to how far it operated upon his mind. We have here the existence of no extraneous influence; thus there is a decided distinction.

■ The District Court properly revoked its order granting a new trial, and there was no abuse of discretion in refusing a new trial.

There being no merit in any of the assigned errors, the judgment of the District Court is

Affirmed.

---

[1] Of course, the testimony of jurors may be received for certain purposes other than that of controlling the verdict upon a motion for a new trial; for example, it may be received in a prosecution for perjury in answering questions on the voir dire or for corruptly rendering a verdict contrary to belief.

[2] For an excellent disquisition treating of this matter of impeachment of verdicts through the admission of affidavits and testimony of jurors, see the opinion in the case of Consolidated Rendering Co. v. New Haven Hotel Company, D.C. 1924, 300 F. 627.