**NORTHERN PACIFIC RAILWAY COMPANY, a corporation, Appellant,**

v.

**Tillie MELY, as Administratrix of the Estate of A. E. Mely, deceased,**
**Appellee.**

**No. 14037.**

United States Court of Appeals
Ninth Circuit.

Dec. 13, 1954.

Cannon, McKevitt & Fraser, Spokane, Wash., Verner R. Clements, Lewiston, Idaho, for appellant.

Maury, Shone & Sullivan, Butte, Mont., Paul W. Hyatt, Lewiston, Idaho, for appellees.

Before BONE, FEE and CHAMBERS, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

The Administratrix of the Estate of A. E. Mely, deceased, brought action against the Northern Pacific Railway Company under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for wrongful death of Mely, who was employed as an engineer by the Railway. The case was tried before a jury, which awarded a verdict to plaintiff.

The engineer at the time of death was in charge of an extra train, No. 6015, consisting of four diesel units and a caboose, which left East Lewiston, Idaho, with orders to stop for the purpose of picking up additional cars at Arrow. Well within the yard limits at Arrow, the engineer, because of the high rate of speed, crashed his train into the caboose of No. 1648, which had preceded his train from East Lewiston to this point and was stationary at the time but with brakes released on the point of proceeding to the next station. Mely had violated standing Rule 93, which required him, within yard limits of Arrow, to move his engine at restricted speed, prepared to stop short of a train such as No. 1648. As a result of the collision, he was killed, as were the brakeman and conductor of No. 1648. Defendant Railway brings this appeal from the judgment for the Administratrix.

On its motion to set aside the verdict and judgment, the denial of which appellant assigns as error, Railway complained that an issue as to whether

there was a rule of Railway requiring Mely be notified that No. 1648 was ahead of him was debated in the jury room, and that the verdict was based on this feature and was therefore improper.

Appellant Railway has affidavits of ten jurors who are made to relate that they would have decided the case otherwise if it were not for the improper arguments made by one of their number as to a nonexistent Rule of the Northern Pacific which required Mely to be given notice by the dispatcher of the presence of the train which had arrived ahead of him in the yards.

But the verdict of the jury in a body after instruction as to the law is binding. The common law judges placed the veil of secrecy about jury deliberations. The bailiff is sworn not to communicate with them and not to allow anyone else to do so while the case is being considered before verdict. After verdict, those who are serving in a public capacity should not be held responsible for what they did in secrecy.[1] Many courts hold that it is unethical for counsel to communicate with former jurors to discover how they stood in a particular case. In metropolitan areas where the same jurors serve for some time, it is possible to forecast a jury's verdict if their previous alignment in other cases is made plain by inquiry. An abuse in inquisitions by the staff of the prosecutor in long jury terms will show the proper jurors to be challenged in a close criminal case. The genius of the common law held the verdict was a collective arbitrament sparked by the intuitive sympathies and phatic understanding of a local community.[2]

Therefore, jurors cannot impeach their verdict in the manner here attempted.[3] Counsel must think this Court incompetent to appraise such af-

1. " * * * rule requires that jurors are not to be harassed in any manner because of a verdict they have rendered. If jurors are conscious that they will be subjected to interrogation or searching hostile inquiry as to what occurred in the jury room and why, they are almost inescapably influenced to some extent by that anticipated annoyance. The courts will not permit that potential influence to invade the jury room. He who makes studied inquiries of jurors as to what occurred there acts at his peril, lest he be held as acting in obstruction of the administration of justice. * * * a searching or pointed examination of jurors in behalf of a party to a trial is to be emphatically condemned. It is incumbent upon the courts to protect jurors from it." Rakes v. United States, 4 Cir., 169 F.2d 739, 745–746. "Jurors are free from any such espionage, attack, inconvenience, or inquiry. * * * What occurred there is sacred. * * * Great care and constant vigilance are exercised to prevent extraneous and outside influences. An equal respect for the verdict after rendition in so far as jury room deliberations are concerned is necessary." United States v. 120,000 Acres of Land, D.C., 52 F.Supp. 212, 213.

2. " * * * departure from instruction is a risk inseparable from jury secrecy and independence." Stein v. New York, 346 U.S. 156, 178–179, 73 S.Ct. 1077, 1090,

97 L.Ed. 1522. " ' * * * the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference.' " McDonald v. Pless, 238 U.S. 264, 267–268, 35 S.Ct. 783, 784, 59 L.Ed. 1300.

3. " * * * the testimony of jurors should not be received to show matters which essentially inhere in the verdict itself * * *." Hyde v. United States, 225 U.S. 347, 384, 32 S.Ct. 793, 808, 56 L.Ed. 1114. Appellants here sought to rely upon an improper argument advanced by a member of the jury in the course of its deliberation. Except in those jurisdictions in which this inquiry is authorized by statute, such intrusion into the "expressions, arguments, motives, and beliefs" of jurors during retirement is unanimously condemned. 8 Wigmore on Evidence § 2348, et seq. (3rd Ed., 1940). Bateman v. Donovan, 9 Cir., 131 F.2d 759, 764–765; Southern Pacific Co. v. Haight, 9 Cir., 126 F.2d 900, 910; Department of Water and Power of City of Los Angeles v. Anderson, 9 Cir., 95 F.2d 577, 586; Spokane International Railway Co. v. United States, 9 Cir., 72 F.2d 440, 443; Moore v. United States, 9 Cir., 1 F.2d 839, 841; Poindexter v. Groves, 2 Cir., 197 F.2d 915, 918; Eagle Lake Improvement Co. v. United States, 5 Cir., 160 F.2d 182, 184; Davis v. United States,

fidavits. The trial judge very properly gave these documents no weight or credence. All trial lawyers know that jurors, after the event, are always ready to be on the side of whoever asks them. These affidavits in this case are as standardized as the fittings of a Pullman. The particular points to which the affidavits were directed will be entirely disregarded on account thereof. In this instance we imply no censure of counsel, since it has been explained to us that they were beguiled into this situation by certain circumstances which were misleading.[4] We do hold for future guidance that it is improper and unethical for lawyers, court attachés or judges in a particular case to make public the transactions in the jury room[5] or to interview jurors to discover what was the course of deliberation of a trial jury.[6]

Railway also assigns as error the admission of certain evidence, the instructions given and requests refused. Four specifications of negligence were submitted to the jury. The plaintiff charged that defendant failed (1) to provide Mely with a safe place to work, (2) to give warning of obstruction and danger ahead, (3) to place men, flares or signals to give warning of the obstruction at a reasonable distance therefrom, and (4) properly to protect No. 1648 while it was in an obscured position, and to protect No. 6015 by notice as above specified and warn Mely of the obstruction of the main line track. Appropriate exceptions were taken to this submission.

There was error in this approach of the trial judge. All these specifications are variations of the requirement that the employer owes a duty to the employee to exercise reasonable care in furnishing a reasonably safe place to work. But this concept generally involves static characteristics and the physical conditions of the workshop. However, this was not in issue here under all the evidence. It was perfectly clear that a safe place to work was furnished by Railway. The roadbed, operating equipment and the trains and appliances were apparently in perfect condition. There was an adequate set of rules, which is the only other requirement of a safe place to work where there is equipment which is periodically in motion.

Railway objected that the court did not construe these written express commands as to conduct of employees. The trial court treated the case as though there were charges of common law negligence, without regard to these regulations, which are absolutely essential to the complicated operation of a modern trans-

5 Cir., 47 F.2d 1071; Salibo v. United States, 5 Cir., 46 F.2d 790; Williams v. United States, 6 Cir., 3 F.2d 933, 936; Young v. United States, 10 Cir., 163 F. 2d 187; Schirra v. Delaware, Lackawanna & Western Railroad Co., D.C., 103 F. Supp. 812, 824; Morris v. Redak, 124 Colo. 27, 234 P.2d 908, 913; Martinez v. Ashton, 124 Colo. 23, 233 P.2d 871, 873; Williams v. State, 204 Md. 55, 102 A.2d 714.

4. There are, of course, limitations on the principle of secrecy of jury deliberations, as there are with the grand jury. Goodman v. United States, 9 Cir., 108 F.2d 516, 521, 127 A.L.R. 265; United States v. Smyth, D.C., 104 F.Supp. 283.

5. With our ultramodern genius for attempting to remove the luster from solid gold, the ethical and spiritual significance of a jury verdict has been almost destroyed. If there can only be televised jury deliberations, the process will be complete. Yet one of the great bulwarks of liberty is that a jury can acquit against the evidence and the directions of the judge because it reflects the ethical feeling of a community, kindled by a divine spark. Historically, the jury was a substitute for the judgment of God in ordeal or by battle. If trial juries are properly handled, they still catch the spark.

6. "* * * born of the fear of the Star Chamber and of the tyranny of the Stuarts. * * * It stands for a great principle, which is not to be whittled down or sacrificed." Cardozo, J., in Clark v. United States, 289 U.S. 1, 17, 53 S.Ct. 465, 470, 77 L.Ed. 993. "A lawyer must never converse privately with jurors about the case; and both before and during the trial he should avoid communicating with them, even as to matters foreign to the cause." American Bar Association Canons of Professional Ethics, No. 23.

continental railroad. It is true, conduct controlled by rule might be improper and negligent even if in strict accordance therewith.[7] But no such issue was presented here. The applicable rules were reasonable and proper under the circumstances. The evidence shows no violation of the rules by anyone except Mely himself.

■ Railway also objected to the failure to construe the rule which required Mely, the engineer, to have his train under control within yard limits. There was evidence that this was the sole cause of his death. But the trial court did not instruct that a violation of this rule was negligence and that, if his death resulted solely and proximately from this cause and not in part from other negligence attributable to the carrier, the Administratrix could not recover.[8] If the jury had been given the instruction, they would have returned a verdict for Railway if they had followed the evidence. Proper exception was taken.

■ Railway contends its motion for directed verdict should have been granted on the ground that Mely caused his own death. Plaintiff counters with the contention that Railway was at least partly responsible for the accident. Where the injury of one employee results from the combined fault of himself and a fellow employee, then the doctrine of comparative negligence here contended for would be applicable and the damages should be divided, 45 U.S.C.A. § 53, if the death resulted in "part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works * * * or other equipment." 45 U.S. C.A. § 51.

But the record in this case did not supply a scintilla of evidence that Railway was negligent with regard to any of the equipment or roadbed or other items enumerated in the statute as above quoted.

There was no proof here of any nature which indicated a failure of Railway to notify Mely that No. 1648 was ahead of him. Under leading questions, the fireman and brakeman testified uncertainly that they were not informed of it. Of course, their interest and bias are obvious. But Mely may have been notified and decided that it had left Arrow before he got to the yard limit. There is no proof. Furthermore, no duty to warn is shown. The danger of fast movement within yard limits is known to everyone and established by the rule requiring him therein to move at retarded speed and stop short of obstruction. The yard limit was his warning.

While there was a rule requiring a standing train to send a flagman back with flares and torpedoes, this had no relation to one such as No. 1648, which was within the yard limit and protected by these positive regulations as to speed therein. The expert witness did not testify that such a rule was applicable thereto. No one intimates that it was, except counsel in argument.

There has been a doctrine that, even in the event the negligence of a fellow employee and the injured employee combined to bring about the result, the one suffering injury, which resulted from his own violation of a positive rule or an express instruction ad hoc, could not recover. It is also held that, if an injured employee has, by violation of an express order, so contributed to his injury, no one may recover in his right.[9]

---

7. It is true a rule cannot authorize negligent or wrongful conduct. Southern Railway Co. v. Craig, 4 Cir., 113 F. 76. " * * * observance of such rules, as a matter of law [will not] necessarily be due care * * *." Atchison, Topeka & Santa Fe Railway Co. v. Ballard, 5 Cir., 108 F.2d 768, 771. But there is no such issue in this case.

8. Atchison, Topeka & Santa Fe Railway Co. v. Ballard, 5 Cir., 108 F.2d 768.

9. Cf. Rocco v. Lehigh Valley Railroad Co., 288 U.S. 275, 53 S.Ct. 343, 77 L.Ed. 743; Frese v. Chicago, Burlington & Quincy Railroad Company, 263 U.S. 1, 44 S.Ct. 1,

Plaintiff contends that the exception [10] was repealed by the amendment of the statute, 45 U.S.C.A. § 54. It is not necessary to pass upon that question, although no sanction of the argument is intended by mention thereof. Here it is clear on all the evidence in this record that neither Railway nor any of its officers, agents or employees contributed to the disaster.

Mely accomplished his own death and those of two fellow employees by a willful violation of a rule. Southern Railway v. Dantzler, 286 U.S. 318, 52 S.Ct. 520, 76 L.Ed. 1127. In Southern Railway Co. v. Youngblood, 286 U.S. 313, 52 S.Ct. 518, 76 L.Ed. 1124, it is said:

> "Beyond peradventure respondent's intestate disobeyed a definite order which was not revoked or superseded by any other orders, verbal or written. By force of this order and the rules of the company, No. 483 was bound to pass the semaphore at Orangeburg, run onto the pass track, and not leave until 723 had passed on the main track. Copies were found on the persons of both the conductor and engineer after the collision. This crass disobedience of operating orders was the sole cause of the intestate's death." 286 U.S. at pages 316–317, 52 S.Ct. at page 519.

Rule 93 of the Consolidated Code of the Operating Rules and General Instructions reads:

> "Within yard limits, second and inferior class, extra trains and engines must move at restricted speed."

The defendant has also introduced in evidence the following definition set forth in the Code:

"Restricted Speed—Proceed prepared to stop short of train, obstruction, or anything that may require the speed of the train to be reduced."

The testimony of the surviving brakeman and fireman of No. 6015, that neither noticed "anything unusual in the speed of that train," might indicate that this train crew, including Mely, made a practice of violating the rules with regard to speed. But the testimony is negative and has no meaning. It casts no shade on the positive proof of excessive speed of this train in the yard.

Mely was thoroughly acquainted with the topography of the Arrow yards. The engineer knew No. 6015 was not a "train of superior right," which was "given precedence by a train order." He knew he was driving an extra train. Within yard limits there was no obligation to clear the main track for his equipment. No. 6015 had no right of way and was not on any time schedule. Within yard limits at Arrow, Mely was required to pick up cars. Switching operations would be required before and after his arrival there. He was bound to anticipate the presence of cars or a switch engine on any track within yard limits. The fact that by chance he struck an extra train there does not palliate his fault. The express instruction which he was bound to obey made no distinction between a switch engine or a casual car or an extra train such as No. 1648, which was switching cars or making ready to move to the next station. He had been expressly directed in the yard limits of Arrow to stop short of "train, obstruction, or anything" and to proceed there at "restricted speed" so he could do so.

68 L.Ed. 131; Unadilla Valley Railway Co. v. Caldine, 278 U.S. 139, 49 S.Ct. 91, 73 L.Ed. 224.

10. The case of Tiller v. Atlantic Coast Line Railroad Co., 318 U.S. 54, 63, 63.S.Ct. 444, 87 L.Ed. 610, throws doubt upon the authority of some of the cases cited in Note 9, in the light of the Amendment of 1939. But the court bases the liability of the railroad on negligence, 318 U.S. at page 67, 63 S.Ct. at page 451. Here assumption of risk is relied upon neither actually nor euphemistically. The company had violated a duty neither directly nor vicariously. The conclusion that Mely was solely responsible for his own death involves no concept of assumption of risk.

No one had a duty to control the speed of this train in yard limits except Mely.

The uncontradicted evidence showed that, within the Arrow yard limits and within thirteen hundred feet of the point of collision, his train was traveling forty-seven miles per hour, and this speed continued until he threw on all the air brakes. Mely "dynamited" his train when he saw the caboose of No. 1648 stationary on the track ahead of him, at which time he was 980.3 feet away. His train, traveling at thirty miles per hour, could have been stopped within seven hundred or, at the outside, eight hundred feet. Notwithstanding the application of this tremendous delaying power, however, his train continued its course practically unchecked until it plowed into the stationary extra No. 1648.

After Mely had expressly created a situation of his own volition by a flagrant violation of an express rule in which no one else is shown to have joined, he knew by his own act he was brought to the brink of disaster. But his death was not directly caused by this circumstance, but by his decision to jump from a moving train, which, against orders and by his fault, was moving at a higher rate of speed than was permitted.

To allow recovery on the evidence on this record would establish liability of Railway without fault. The employer would be made an absolute insurer and guarantor.[11] It may possibly be just to hold Railway liable for this willful act of Mely in violating the rule in favor of the representatives of the employees killed by him.[12] The Congress and the courts have not so far encouraged the nihilism of responsibility and apothesis of incompetency which would be accomplished by allowing a recovery here.

The cause is reversed with direction to enter judgment for defendant.

---

11. This intention is consistently disclaimed. Mr. Justice Douglas says, concurring in Wilkerson v. McCarthy, 336 U.S. 53, 68, 69 S.Ct. 413, 420, 93 L.Ed. 497, " * * * for the Act did not make the employer an insurer," and again, "The basis of liability under the Act is and remains negligence." 336 U.S. at page 69, 69 S.Ct. at page 421.

12. This is, of course, the converse of the Rule as applied to Mely. It is possible, as to the employees on the standing train, the Rule was not sufficient to provide them with a safe place to work, and thus they might be required to assume the risk of their employment "contrary to the 1939 Amendment." But this question is far beyond the limits of the issues in this case, and no position upon it is intimated. Cf. Cato v. Atlanta, etc., Railway Co., 164 S.C. 123, 162 S.E. 239, certiorari denied 284 U.S. 684, 52 S.Ct. 200, 76 L.Ed. 577.