Arnold G. **PESSIN** and Rex C. **Ellsworth,**
Plaintiffs,

v.

**KEENELAND ASSOCIATION,** the University of Kentucky Research Foundation and the **Bank of New York,** Defendants.

**No. 1800.**

United States District Court
E. D. Kentucky,
Lexington Division.

March 27, 1969.

Hurst & Burnett, Lexington, Ky., for plaintiffs.

Stoll, Keenon & Park, Lexington, Ky., for Keeneland Ass'n.

Harbison, Kessinger, Lisle & Bush, Lexington, Ky., for University of Kentucky Research Foundation.

Gess, Mattingly, Saunier & Atchison, Lexington, Ky., for Bank of New York.

OPINION

SWINFORD, District Judge.

This is a civil action for treble damages brought under the antitrust laws. After an extended trial, the jury returned a verdict for the defendants and judgment was entered thereon.

The plaintiffs have moved to set aside the verdict and judgment and for a new trial on the grounds that the verdict is contrary to the law and contrary to the evidence and that the court erred in the

admission and exclusion of evidence. The plaintiffs have also moved to set aside the verdict and for a new trial and for relief under Rule 60(b), Federal Rules of Civil Procedure, on the grounds of misconduct of the juror, Eva Kennedy Robinson, misconduct of the juror, Ralph M. Thomas, and misconduct of certain jurors, the defendant, Keeneland Association, and the wife of the president of the said defendant. The motion with regard to the alleged acts of misconduct is supported by affidavits of two jurors, the plaintiffs, and the plaintiffs' two attorneys. The plaintiffs also move that they be granted leave to take testimony of all the jurors in the trial.

The defendants have filed affidavits of the jurors, Eva Kennedy Robinson, Mary Ethel Cole, Ralph M. Thomas, Mrs. Guy Goodlett, and Betty Tyree, and of Alma H. Haggin, the wife of the president of defendant, Keeneland Association, in opposition to plaintiffs' motions. The defendants also have moved to strike from the record the affidavits of the jurors, Louise W. Rankin and Brenda J. Smith, filed in support of plaintiffs' motions.

The plaintiffs are not entitled to any relief on the grounds that the verdict is contrary to the law and the evidence or that the court erred in admitting or excluding evidence.

In her affidavit filed in support of plaintiffs' motion, Louise W. Rankin, one of the jurors, stated that on two occasions prior to the selection of the jury the juror, Eva Kennedy Robinson, said in words or substance "that she didn't need to be selected to serve on the jury in the case involving Maine Chance Farm because she had already made up her mind as to how she would decide it since she had been reading the papers." Louise W. Rankin also stated in her affidavit that, during a discussion in the jury room, Eva Kennedy Robinson said she would not believe anything Judge Johnson (one of the witnesses for plaintiffs) said because she considered him to be a crook and that, also during a discussion in the jury room, the foreman of the jury said that any juror who voted for plaintiffs could be compelled to explain why he so voted and how any conspiracy was committed. Louise W. Rankin also stated that the wife of the president of Keeneland and two jurors participated in a conversation in the ladies' restroom, which lasted at least five minutes, in which Mrs. Haggin complimented the two jurors on their attentiveness.

In her affidavit filed in support of plaintiffs' motion, Brenda J. Smith, one of the jurors, stated that, during a recess of the trial, Ralph M. Thomas said, "Poor Mr. Ellsworth, poor fellow, I think maybe, just maybe, he has gotten into something that he wishes he hadn't," and another of the jurors, Mrs. Guy Goodlett, made a comment about his demeanor. Brenda J. Smith also stated that, during a discussion in the jury room, Eva Kennedy Robinson stated that she would not believe Judge Johnson on a stack of Bibles and that Mary Ethel Cole, one of the jurors, told her in substance: "If we find them guilty, they can question us, and make us tell every bit of evidence that proved that they were guilty of a conspiracy." Brenda J. Smith also stated in her affidavit that Louise W. Rankin, during the course of the trial, said that Eva Kennedy Robinson, prior to the trial, said that she did not need to sit through the trial since she had already made up her mind. Brenda J. Smith also stated that she and Betty Tyree, another juror, were in the ladies' restroom during a recess when Alma H. Haggin entered and commented on a run in her stocking; that she (Brenda J. Smith) left the restroom but Betty Tyree and Mrs. Haggin remained for three to five minutes; and that Betty Tyree subsequently commented that Mrs. Haggin was a nice person and had complimented her.

These affidavits contain charges of three distinct acts of misconduct. The first concerns the alleged misconduct of the juror, Eva Kennedy Robinson, in forming or expressing an opinion as to the merits of this action prior to trial

and in forming an opinion as to the credibility of one of the plaintiffs' witnesses and in failing to divulge these opinions on voir dire, although she was asked about them. The second charge concerns the alleged misconduct of the juror, Ralph M. Thomas (and Mary Ethel Cole), in injecting false statements of the law into the deliberations of the jury. The third charge concerns alleged improper communications between Alma H. Haggin and certain jurors in the ladies' restroom.

■ A motion for a new trial is addressed to the sound discretion of the trial judge. United States v. Van Buskirk, 6 Cir., 304 F.2d 871; Thomas v. Nuss, 6 Cir., 353 F.2d 257, 259; 39 Am. Jur. New Trial, section 96.

■ In considering the issues of alleged misconduct, it should be noted that plaintiffs' counsel was asked specifically if he wanted the jury polled and answered in the negative. The transcript reads at page 5284:

"THE CLERK: The verdict: 'We the jury do agree and find for the Defendants.' Signed 'Ralph M. Thomas, Foreman, February 21, 1969.'

THE COURT: And so say you all, members of the jury?

Do you want to poll the jury, Mr. Hurst?

MR. HURST: I believe not, no, your Honor."

While a party's declining to poll the jury cannot be construed as a waiver of all defects in the jury, it should be remembered that it is a means, available at the request of the losing party, of ascertaining whether any juror has been coerced or induced to agree to a verdict to which he does not fully assent. Miranda v. United States, 1 Cir., 255 F.2d 9, 17.

■ Although jurors may be compelled to state in open court whether or not they agree to the verdict, it is a "cardinal principle" of our legal system that the deliberations of the jury shall remain private and secret in every case.

United States v. Virginia Erection Corp., 4 Cir., 335 F.2d 868, 872. This rule of the privacy of jury deliberations, in conjunction with the rules that jurors shall not impeach their verdicts and that their arguments and votes in the jury room are privileged, furthers the laudable policies of the law that jurors should be free in their deliberations to discuss the case frankly and without fear, that the jurors should not be subjected to harassment after their discharge, and that there should be an end to litigation. The Supreme Court, in the leading case of McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300, said:

"But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation * * * to the destruction of all frankness and freedom of discussion and conference." 238 U.S. at 267, 268, 35 S.Ct. at 734.

The court in Bateman v. Donovan, 9 Cir., 131 F.2d 759, stated the principle as follows from Professor Wigmore:

"The verdict, as finally agreed upon and pronounced in court by the jurors, must be taken as the sole embodiment of the jury's act. Hence it stands, irrespective of what led up to it in the privacy of the jury-room,—precisely as the prior negotiations of the parties to a contract disappear from legal consideration when once the final agreement is reduced to writing and signed." 131 F.2d at 765.

It is considerations such as those outlined above which have prompted courts to condemnn any unwarranted harassment of jurors or invasion of the privacy of the jury room. Such considerations prompted the Court of Appeals for the Ninth Circuit, in Northern Pac. Ry. Co. v. Mely, 9 Cir., 219 F.2d 199, to say:

> "We do hold for future guidance that it is improper and unethical for lawyers, court attaches or judges in a particular case to make public the transactions in the jury room or to interview jurors to discover what was the course of deliberation of a trial jury." 219 F.2d at 202. (Footnotes omitted.)

See also Gault v. Poor Sisters of St. Francis, 6 Cir., 375 F.2d 539, 550. In so discussing some of the fundamental issues raised by plaintiffs' motions, this court does not imply any censure of counsel in the instant case.

While I have placed great importance on the policy of protecting the integrity of the jury and their verdict, I am not unmindful that there are various limitations and exceptions to the rules. See McDonald v. Pless, supra, 238 U.S., at 269, 35 S.Ct. 783; Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L. Ed. 917.

Having made the foregoing general remarks, I will now turn to each of the specific grounds for a new trial which are urged by the plaintiffs.

First, with regard to the alleged misconduct of the juror, Eva Kennedy Robinson, it should be noted that this juror has filed an affidavit in opposition to plaintiffs' motion in which she denies that she made the statement alleged in the affidavit of Louise W. Rankin and in which she states that she had not formed or expressed any opinion as to how the case should be decided prior to being chosen as a juror and had not formed an opinion before the case was finally submitted to the jury.

■■■■ This court is of the opinion that the affidavit of Louise W. Rankin regarding statements made by Eva Ken-

nedy Robinson outside of the jury room are admissible and should be considered by the court. California Fruit Exchange v. Henry, W.D.Pa., 89 F.Supp. 580, 587–588, affirmed 3 Cir., 184 F.2d 517; see Roland v. Eibeck, Ky., 385 S.W.2d 37, 41, 7 A.L.R.3d 992; cf. Lay v. J. M. McDonald Co., D.Colo., 24 F.R.D. 36, 40. However, the bare allegation of Louise W. Rankin is not sufficient evidence of failure to divulge material facts on voir dire to warrant a new trial or even taking the testimony of other jurors, particularly in view of Eva Kennedy Robinson's denial. Morley v. Cranmore Skimobiles, D.N.H., 67 F.Supp. 812, 813, where the court quotes approvingly from the case of State v. Pike, 20 N.H. 344:

> "A verdict will not be set aside for prejudice in the mind of a juror, where, notwithstanding evidence that he had expressed an opinion, the juror himself denied that he had formed or ever intended to express any, and that he was in fact informed of but little of the case, as it appeared in evidence."

■■■■ Jurors should not be held to impossible standards of impartiality nor required to be totally ignorant of a case before trial. In Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, in a passage that has been frequently quoted and widely approved by the courts, the Supreme Court said:

> "It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality

would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." 366 U.S. at 722–723, 81 S.Ct. at 1642.

■ The statements allegedly made by Eva Kennedy Robinson in the jury room about the credibility of the witness, Judge Johnson, are privileged, violate the rule against jurors' impeaching their verdicts, and should not be considered by the court. Bateman v. Donovan, supra. The case of Clark v. United States, 289 U.S. 1, relied upon by plaintiffs, does not authorize an invasion of the privacy of the jury's deliberations in the pending case. There the privilege was recognized as independent of the rule against jurors' impeaching their verdict, but the privilege was found inapplicable where the juror achieved her position by fraud. As this court ruled above, it is presented with insufficient evidence of fraud committed by Eva Kennedy Robinson, and hence the rule of the *Clark* case does not apply.

Even if the court were to consider what was said in the jury room, the statement allegedly made by Eva Kennedy Robinson does not necessarily show that she was influenced by any preconceived notion of Judge Johnson's credibility. Indeed, it is doubtful whether a question on voir dire concerning the weight which jurors will give the testimony of a certain witness is proper. Anno., Propriety and effect of asking prospective jurors hypothetical questions, on voir dire, as to how they would decide issues of case, 99 A.L.R.2d 7, 59.

■ Second, with regard to the alleged misconduct of the juror (and foreman), Ralph M. Thomas, in injecting inaccurate statements of the law into the deliberations, it should be noted that he has filed an affidavit in which he denies having made the statement attributed to him. In any case, this court is of the opinion that, for the reasons and on the authority discussed above, the statements allegedly made by Ralph M. Thomas in the jury room are not admissible and will not be considered by this court.

■ It is the generally accepted rule that jurors cannot testify to impeach their verdict that they misunderstood the instructions or the law. Bateman v. Donovan, supra, at 765; 53 Am.Jur. Trial, section 1106. Departure "from instruction is a risk inseparable from jury secrecy and independence." Stein v. New York, 346 U.S. 156, 178–179, 73 S.Ct. 1077, 1090, 97 L.Ed. 1522. See United States v. Chereton, 6 Cir., 309 F. 2d 197, 201, cert. denied 372 U.S. 936, 83 S.Ct. 883, 9 L.Ed.2d 767. See also Northern Pac. Ry. Co. v. Mely, supra, where ten jurors stated in affidavits that they would have decided the case differently were it not for the improper arguments of one of the jurors but the court refused to permit the jurors to impeach their verdict in such a way.

Third, with regard to the alleged misconduct of the lady jurors and Alma H. Haggin, wife of the president of Keeneland, it should be noted that Alma H. Haggin has filed an affidavit in opposition to plaintiffs' motions in which she explains the incidents mentioned in the affidavits of Louise W. Rankin and Brenda J. Smith and states that she "did not at any time discuss the case or any matter remotely connected with the case with any of the jurors, and I did not attempt in any way, directly or indirectly, to influence any of the jurors in any manner." Betty Tyree, one of the jurors, also filed an affidavit explaining an incident in the ladies' restroom with Alma H. Haggin. It is not alleged in any of the affidavits that this case was ever discussed by the ladies.

■ The allegations in the affidavits which relate to the contacts between Alma H. Haggin and the jurors are admissible to show "irregularities of conduct." Bateman v. Donovan, supra, at 765. Numerous cases have considered affidavits or other evidence of contacts between a juror and a party. See Anno., Contact or communication between juror

and party or counsel during trial of civil case as ground for mistrial, new trial, or reversal, 62 A.L.R.2d 298. The same considerations apply to an allegedly improper contact between a juror and a relative of a party or an otherwise interested person.

During an extended trial such as this was, a certain amount of contact between jurors and interested persons is inevitable. While it is axiomatic that litigants and jurors have a duty to refrain from seeking each other's companionship, it is not required that they be curt or lacking in the customary amenities of social intercourse when the inevitable contacts occur.

The rule with regard to such contacts seems to be that they provide a ground for a new trial only if the party or counsel acts with an improper motive or if the case is discussed and the misconduct was prejudicial to one of the parties to the action. In California Fruit Exchange v. Henry, supra, the court said:

> "If, when explained, however, it can be seen that in the communication nothing was said about the case and nothing was done for the purpose of influencing the mind of the jury, and that the communication or conversation had no influence on the verdict which was reached, no ground exists to set the verdict aside for the reason that said comment could not have been prejudicial.
>
> "* * * A new trial should not be granted because of irregularities in the conduct of a juror or counsel unless it is made to appear that the alleged misconduct was prejudicial to one of the party litigants. (citing cases)" 89 F.Supp. at 588–589.

Practically identical language is used in Palmer v. Miller, W.D.Mo., 60 F.Supp. 710, 715.

This court is satisfied that the contacts between Alma H. Haggin and the jurors did not influence the verdict in any way and that the communications were not made with any improper design. The affidavits filed in support of plaintiffs' motions do not raise a suspicion in the court's mind sufficient to take the testimony of the persons involved. They do not establish more than an ordinary courtesy under the circumstances, particularly when viewed in the light of opposing affidavits. See Whitcomb v. Whitcomb, Ky., 267 S.W.2d 400, 403.

The case of United States v. Harry Barfield Co., 5 Cir., 359 F.2d 120, relied on by plaintiffs, is distinguishable from the instant case. There the court was careful to point out that the president of a party initiated more than a casual conversation:

> "By way of summation it is clear that the taxpayer president approached the jurors. They did not approach him. He sought to identify with juror Lockhart through the fact of knowing about his drug business. He then sought to cement the identity by giving the juror his wife's name which led to a conversation regarding his wife's family. He apparently also managed to find out that the juror from the radio station had known his brother.
>
> * * * * * *
>
> "Here, the president of the taxpayer corporation deliberately sought to identify himself with one of the jurors in a way that would have been impossible through an inadvertent or accidental meeting." 359 F.2d at 123–124.

The parts of the affidavits filed herein which are admissible do not sustain the allegations of misconduct in plaintiffs' motions to set aside the verdict and judgment and for a new trial and for relief under Rule 60(b). Therefore, the motions should be overruled.

The affidavits do not raise a sufficient doubt as to any prejudicial misconduct to justify a hearing or taking the testimony of the jurors, and plaintiffs are not entitled to a merely exploratory hearing. Kissell v. Westinghouse

Electric Corp., 1 Cir., 367 F.2d 375. Therefore, their motion to take the testimony of the jurors and other persons should be overruled.

This court is of the opinion that no useful purpose would be served by striking those portions of the affidavits which are inadmissible, and the defendants' motion to strike should be overruled.

An order in conformity with this opinion is this day entered.