## RAMSEY et al. v. UNITED STATES.

Circuit Court of Appeals, Sixth Circuit.
July 6, 1928.

No. 5077.

1. **Searches and seizures** ⊜⇒7(19)—**Officers, acting on information received, seeing liquor containers in automobiles, held warranted in believing automobiles were transporting liquor, and in searching without warrant (Const. Amend. 4).**

Where one who had been assisting officers in breaking up liquor business told officers to go to certain place, where they would find load of liquor, and officer saw fruit jar cartons in one automobile and a large quantity of stuff in "paper pokes" used for carrying liquors in another automobile, before opening doors facts and circumstances presented to officers *held* sufficient to warrant men of prudence and caution in believing that the automobiles were transporting liquor in violation of law, and justified search without warrant, under Const. Amend. 4.

2. **Criminal law** ⊜⇒393(1), 394—**Admitting result of search of automobiles for liquor without warrant, where facts justified search without warrant, did not violate constitutional provisions (National Prohibition Act [27 USCA]; Const. Amends. 4, 5).**

In prosecution for conspiracy to violate National Prohibition Act (27 USCA), admitting result of search of automobiles without warrant, where facts justified search without warrant, *held* not to violate Const. Amends. 4, 5.

3. **Criminal law** ⊜⇒925(5)—**Denying new trial on ground jurors, after retiring, were given by one of them information regarding codefendant's place not given in evidence, held not error, where such testimony did not affect defendants' case.**

Denial of motion for new trial on ground that jurors, after they had retired, were given by one of them, not in presence of and without knowledge of defendants, information regarding reputation of codefendant's place, not given in evidence on trial, *held* not error, where such testimony did not touch defendants' case.

4. **Courts** ⊜⇒353—**In federal courts, jurors may not testify in impeachment of their own verdict.**

General rule in federal courts is that jurors may not testify in impeachment of their own verdict.

5. **Courts** ⊜⇒353—**Local practice does not control federal courts as to right of jurors to impeach their verdict (Conformity Act [28 USCA §§ 724, 726, 727]).**

Local practice in state does not control practice in federal court as to right of jurors to testify in impeachment of their own verdict; Conformity Act (28 USCA §§ 724, 726, 727) not applying.

In Error to the District Court of the United States for the Eastern District of Tennessee; Xenophon Hicks, Judge.

Halcomb Ramsey and another were convicted of conspiracy to violate the National Prohibition Act, and they bring error. Affirmed.

Sam A. Susong, of Greeneville, Tenn. (Susong, Susong & Parvin, of Greeneville, Tenn., McMahan & Pierce, of Morristown, Tenn., and Greer & Greer, of Newport, Tenn., on the brief), for plaintiffs in error.

Wilbur W. Piper, Asst. U. S. Atty., of Knoxville, Tenn. (George C. Taylor, U. S. Atty., of Knoxville, Tenn., on the brief), for the United States.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. The two plaintiffs in error were indicted, under section 37 of the Penal Code (18 USCA § 88), jointly with Laura Ramsey (sister of plaintiff in error Halcomb Ramsey), one Mathis, one Green, and one Thomas, on a charge of conspiring to violate the National Prohibition Act (27 USCA) by selling, possessing, transporting, and manufacturing intoxicating liquor and maintaining a common nuisance at the dwelling house of Laura Ramsey, in Newport, Tenn. The two plaintiffs in error were convicted and sentenced. Laura Ramsey was convicted, but the final disposition of her case does not appear. The remaining three persons charged in the indictment were acquitted.[1]

All the parties charged in the conspiracy indictment had been found by the prohibition agent and deputy United States marshal at the home of Laura Ramsey. A Hudson car driven by Halcomb Ramsey and a Ford coupé driven by McCurry, and occupied also by Mathis, were then and there searched without a warrant therefor, and a large quantity of whisky found in each car. A Ford touring car brought by Green and Thomas (the "colored boys") contained no liquor. On the trial each plaintiff in error, while denying a conspiracy, admitted that the liquor found in his car was being possessed and transported by him, without even asserting a claim of lawful purpose.

It was the government's theory that Green and Thomas were at the Laura Ramsey home for the purpose of getting a load of liquor. The first of the two complaints presented here is that the two officers had no probable cause

---

[1] It appears by the court's charge that plaintiffs in error McCurry and Mathis were charged in another indictment, and plaintiff Ramsey in still another, with the substantive offenses of unlawfully possessing and transporting intoxicating liquors, and that all three cases were tried together with the conspiracy case. The other two cases are not involved here.

for searching the automobiles of the respective plaintiffs in error, and that the admission of the result of that search violated the Fourth and Fifth Amendments to the Constitution.

We see no merit in this contention. There was testimony, in substance, that one Proffett, who had been assisting the officers in "breaking up the liquor business on Cosby," saw plaintiff in error Halcomb Ramsey in his Hudson car, and plaintiff in error McCurry and Mathis in the Ford coupé, the latter not far behind the former, and going toward Cosby; that the Hudson car (at least) was heavily loaded; that Proffett told the officers that, if the prohibition director wanted to catch two cars "right quick," to go to Laura Ramsey's; if he would go there he would catch them; or, as again stated, that "Halcomb Ramsey was coming down the road and had gone on with a load of liquor;" that because of this information the officers went at once to Laura Ramsey's where McCurry was seen to come out of the house and put his hand on the door of the Hudson (Ramsey's car), and when he saw the officers went back in the house; that Ramsey came out of one door of the house and McCurry out of the other; that Laura Ramsey's house was not the home of either plaintiff in error, nor was the whisky seized in the house, but in the automobiles which were in Laura Ramsey's yard. Neither the automobiles nor the whisky therein were claimed by any one to belong to Laura Ramsey. The two cars containing the liquor, when found at Laura Ramsey's, were splashed with fresh mud and apparently were just driven in. The soft ground also showed the marks of recent tracks; there was testimony that one of the officers, before opening the cars, looked in through the window of the Hudson car and saw there a large number of "fruit jar cartons," said to be commonly used for carrying bottled liquor. The seizure was in February, and thus outside the canning season. On looking through the door of the Ford coupé, before it was opened, there was seen a large quantity of stuff in "paper pokes," said also to be used for carrying liquors.[2]

The first objection to the testimony of the finding and seizure of liquor was made at the close of Proffett's testimony, by motion to strike out, and not until after both officers and a fourth witness for the government had testified. The record thus shows, not only express information given by Proffett, which fully justified the officers in going to Laura Ramsey's home; but the evidence, even standing alone, disclosed by the cars themselves, before they were opened, completely warranted the expectation that liquor would be found within. Not to have acted upon the evidence so presented would call for explanation. We see no merit in the contention that Proffett himself had not sufficient evidence to justify the word sent the officers. If true, it would not be controlling. The crucial question concerns only the officers' prudence and caution. However, it is at least presumable that Proffett was well acquainted with both plaintiffs in error, and with operations on their part justifying his message to the officers.

[1,2] We think the facts and circumstances presented to the officers were amply sufficient to warrant men of prudence and caution in believing that the two cars were transporting liquor in violation of law, and that is the test of the right to seize and search under the situation here. The claim that the constitutional rights of plaintiffs in error were violated thereby impress us as trivial. Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; Dumbra v. United States, 268 U. S. 435, 438, 45 S. Ct. 546, 69 L. Ed. 1032; Steele v. United States, No. 1, 267 U. S. 498, 504, 45 S. Ct. 414, 69 L. Ed. 757; Steele v. United States, No. 2, 267 U. S. 505, 45 S. Ct. 417, 69 L. Ed. 761; Daisen v. United States (C. C. A. 6) 4 F.(2d) 382; Keith v. United States (C. C. A. 6) 11 F.(2d) 933, 935; Hilsinger v. United States (C. C. A. 6) 2 F.(2d) 241.

[3,4] The only remaining complaint relied on here relates to the denial of the motion for new trial, on the ground that the jurors, after they had retired to consider their verdict and before reaching the same, were told by one of their members, not in the presence of and without the knowledge of the defendants, information as to facts not given in evidence on the trial by sworn witnesses, and thus not in the presence of the defendants or the court. On the hearing of this motion testimony was given by some members of the jury to the effect that, while the jury was still deliberating, and while one juror was voting against conviction, a member of the jury asked if there was anybody

---

[2] We pass by the suggestion that the court had not been asked to order return of the seized liquor. The record shows that some, at least, of the liquor was destroyed as seized. Possibly all of it was so treated. It does not appear that any was received or offered in evidence on the trial, but its nature was not only sworn to, but was admitted by plaintiffs in error.

on the jury from the section in question, who knew the the parties or the reputation of their place, and received the reply from one of the jurors that he had heard some of the garage boys talking about going to Aunt Laura's, or, as one juror put it, that the juror in question had heard of the Laura Ramsey place for the last four or five years as being a place where any one could go and buy whisky, and that "we must get rid of it." It would appear by the testimony of another juror that, before the statements in question, the jury had convicted plaintiffs in error, and that the trouble was in reaching a verdict as to Laura Ramsey. One of the jurors testified that the juror in question was told what he said was hearsay and "didn't go." The court denied the motion as to plaintiffs in error, on the ground that there was no indication that "any testimony before the jury touching their case occurred. It is all as to Laura Ramsey, so that is not in their way so far as their case is concerned." The court reserved the disposition of the motion as to Laura Ramsey.

[5] We think the court did not err in refusing to set aside the verdict as to plaintiffs in error. The general rule is well established in the federal courts that jurors may not testify in impeachment of their own verdict. McDonald v. Pless, 238 U. S. 264, 269, 35 S. Ct. 783, 59 L. Ed. 1300; Hyde v. United States, 225 U. S. 347, 32 S. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614; Williams v. United States (C. C. A. 6) 3 F.(2d) 934, 936. True, the statutory practice in Tennessee is in contravention of the rule in the federal courts. Street Railway & Tel. Co. v. Simmons, 107 Tenn. 401, 403, 64 S. W. 705. But the Conformity Act (28 USCA §§ 724, 726, 727), does not apply to the subject before us. McDonald v. Pless, supra. The instant case is entirely outside the rule which permits proof of matters occurring outside, the jury room which might have influenced jurors (as, for instance, newspaper publications). See Williams v. United States, supra.

Nor need we consider whether or not, in the present state of the rulings of the Supreme Court, there might be instances in which testimony of jurors could not be excluded without violating the plainest principles of justice. In the instant case, not only did the court not exercise its discretion in such direction, but its conclusions of fact negative existence of room for such action.

The judgment of the District Court is affirmed.