**Dennis A. WYROSDICK**
v.
**SOUTHERN RAILWAY COMPANY.**
No. 4099.

United States District Court
E. D. Tennessee, N. D.

Feb. 8, 1961.

Hodges, Doughty & Carson, Knoxville, Tenn., for plaintiff.

Clyde W. Key, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

Defendant, Southern Railway Company, has filed a motion for a new trial and urged in its support three grounds.

The first two grounds assert that the verdict is excessive, and so excessive as to evince "passion, prejudice or unaccountable caprice on the part of the jury".

Plaintiff Wyrosdick is a former employee of the defendant, having commenced his work for the defendant on January 21, 1921. He is a pipe fitter by trade. His work involved heavy lifting and climbing at intervals.

Plaintiff was injured on July 15, 1957 while operating what is referred to in the record as a "shop mule", which, as indicated by the photographs in the record, is a small gasoline-propelled tractor, without springs. At the time of the injury, he was working in Coster Yard, at Knoxville. While driving this tractor, which he was unaccustomed to drive—in an effort to get it in a dry place before a storm—he drove it into a hole or depression in the yard and this caused him to bounce up and down in the seat, and he hit his lower back against the middle seat causing a fracture to his sacrum and coccyx bones. He testified that at the moment of the accident, he had glanced down at a wire in the tractor which was shorting against the gear shift lever.

Plaintiff sued under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., and a verdict was rendered in his favor for $20,000.00.

Defendant denied all charges of negligence and affirmatively pleaded contributory negligence in mitigation of damages. Defendant insisted that plaintiff was not injured to the extent claimed by him.

The issues of negligence and contributory negligence were submitted to the

jury under proper instructions. The issue of the extent of plaintiff's injuries was also submitted to the jury under detailed instructions. The jury was told, in substance, that plaintiff insisted that his injuries were severe and permanent while defendant insisted that plaintiff had fully recovered. The jury had the benefit of various reports of doctors who examined and treated plaintiff, including the reports of Doctors Gee, Abercrombie, Haase, Hawkins, Peirce, Spray, Muller, Penn and Peters and also the oral testimony of Doctor Peters.

The accident occurred around 3:20 p. m.—near quitting time. Plaintiff testified that the lick to his back caused him to lose consciousness momentarily. A fellow employee assisted him in getting off of the tractor, but he drove his own car home from work immediately following the accident. He stated that he suffered pain after he returned home.

The accident occurred on Friday and he visited Dr. Dabbs at the Acuff Clinic on the following Tuesday, who examined him at that time. Plaintiff stated that he couldn't sit down. X-rays were made and he was advised to stand in hot water at intervals. He was off from work until around August 2 on account of the injuries. When he returned to his work, the soreness in his back had not subsided. His fellow employees assisted him in his work. He stated that he was never free from pain. He continued to work until the latter part of 1958 when he underwent an operation for hernia. The operation caused him to be off from work until February 27, 1959. He continued to work except for the few days that he was unable to work until December 29, 1959, when he was laid off on account of slack in work.

Plaintiff's earnings for 1957 were $4,469.27, for 1958 $4,338.25, and for 1959 $4,229.28.

Plaintiff testified that he was called to return to work several times in 1959, but was unable to do so on account of physical disability. In 1959, there were employees junior to him in time of service with the defendant.

Plaintiff was in the hospital for 45 days for his low back injuries which he claims to have sustained in the accident. His total hospital bills were $1,349.30, $460 of which was for massages to the back.

Mr. Wyrosdick went to Florida after being released from the hospital. He stated that when he was down on the ground it was very difficult to get up.

Plaintiff is fifty-five years of age and has a 7th grade education.

Some of the medical reports indicate that plaintiff suffers from traumatic neurosis which may be attributed both to his accidental injuries of January 15, 1957 and to his inability to work. The reports indicate that he was anxious to return to work following his injuries.

The officials of the defendant did not feel he was capable of doing the work since in 1959 they worked employees junior to him in time of service.

It is the opinion of this Court that there is substantial evidence to support the award of the jury. Werthan Bag Corp. v. Agnew, 6 Cir., 202 F.2d 119.

Grounds Nos. 1 and 2 of the motion are, therefore, overruled.

■ The third ground asserts that the jury reached its verdict "by the gambling or quotient method, and said verdict is accordingly void and of no effect". In support of this ground, an affidavit of Clyde W. Key, Esq. was filed.

This affidavit states in substance: That on January 19, 1961—the verdict of the jury having been returned on the 17th—a member of the Knoxville Bar, who is Local Counsel for defendant, called Mr. Key by phone and stated to him, in substance, that a close friend had repeated a conversation he had with one of the jurors who sat on the case and who was a relative of Mr. Key's informant; that the juror stated that in arriving at the verdict "the jurors each

agreed to put down the amount to which he thought plaintiff was entitled, total these amounts, divide the total by twelve, and to award the plaintiff damages in the amount thus arrived at; that when this procedure was followed, the amount thus arrived at was between $19,000.00 and $20,000.00, whereupon some of the jurors vigorously protested that such amount was exorbitant and unreasonable; that nevertheless other members of the jury insisted that all of the jurors were bound by their aforesaid agreement, and that under these circumstances the protesting jurors reluctantly agreed to the $20,000.00 verdict, which was reported to the Court".

Affiant requests that the Court interrogate the members of the jury as to the manner in which they reached their verdict in an effort to determine whether or not the verdict was arrived at in the manner indicated by affiant's informant.

The rule seems to be well established under federal procedure that a juror cannot testify to support or to impeach his verdict. McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300.

The importance of protecting the secrecy of the deliberations of the jury and of protecting the jurors from inquisitions after they have rendered their verdict is necessary to the preservation of a sound jury system. Stein v. People of State of New York, 1953, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522. See Ramsey et al. v. United States, 6 Cir., 1928, 27 F.2d 502.

Extraneous actions upon the part of the jurors may be inquired into under certain circumstances. Aluminum Company of America v. Loveday, et al., 6 Cir., 273 F.2d 499.

The late Judge Fee wrote at length on the subject of placing "the veil of secrecy about jury deliberations". Northern Pacific Railway Co. v. Mely, 9 Cir., 1954, 219 F.2d 199, 201. See Rakes v. United States, 5 Cir., 1948, 169 F.2d 739.

It is the opinion of the Court that there is no sanction in the alleged facts brought to its attention for making the interrogation of the members of the jury with respect to its deliberations in this case.

Ground No. 3 of the motion is, therefore, overruled.

Let an order be presented in conformity with the views here expressed denying defendant's motion for a new trial.