**COMPLETE AUTO TRANSIT, INC.,**
Appellant,

v.

**WAYNE BROYLES ENGINEERING
CORPORATION, Appellee.**

No. 21635.

United States Court of Appeals
Fifth Circuit.

Oct. 1, 1965.

James J. Duffy, Jr., Mobile, Ala., Inge, Twitty, Duffy & Prince, Mobile, Ala., of counsel, for appellant.

Irwin W. Coleman, Jr., Sam W. Pipes, III, G. Sage Lyons, Mobile, Ala., Lyons, Pipes & Cook, Mobile, Ala., of counsel, for appellee.

Before JONES and BROWN, Circuit Judges, and SHEEHY, District Judge.

SHEEHY, District Judge:

In this diversity suit appellee sought to recover from appellant for the damages to its tractor and trailer and the cargo thereon resulting from a collision between its tractor and trailer and a tractor and trailer owner by appellant, which collision occurred in the State of Alabama. A jury trial resulted in a verdict in favor of appellee in the amount of $14,337.00, and judgment was entered thereon for appellee.

Appellant contends that the trial court committed reversible error in the following respects:

(1) In refusing to consider the affidavits of several jurors to the effect that the verdict was arrived at by means of the illegal quotient method and thus denying appellant's motion for new trial;

(2) in failing to declare a mistrial when the subject of insurance was injected into the case in the presence of the jury; and

(3) in allowing evidence of the expenses incurred by appellee in the removal of its damaged vehicle from Alabama to Houston, Texas, for repairs, without there having been any showing of necessity for such removal.

We find none of these contentions to be meritorious.[1]

Subsequent to judgment being entered in favor of appellee, the appellant timely filed a motion for new trial. As one of the grounds for the motion it asserted that the verdict was invalid because of misconduct of the jury in employing the illegal "quotient" method in arriving at its verdict. Attached to the motion were the affidavits of seven of the jurors. The jurors' affidavits were to the effect that after the jury had deliberated unsuccessfully for more than an hour on the question of the amount of damages to be awarded appellee the members of the jury, acting on the suggestion of one of the jurors, agreed that each juror would submit the amount of damages he thought would be reasonable to award appellee, that these amounts would be added and the aggregate divided by twelve, with the quotient thus derived constituting the amount that would be awarded appellee, and that the amount of the verdict was so determined. The trial court refused to consider the jurors' affidavits because the same tended to impeach their verdict

---

1. It is noted that appellant makes no claim that the amount of the jury verdict was either excessive or unreasonable. This is understandable because the evidence as to appellee's damages was sufficient to have supported a verdict for a sum slightly in excess of $20,000.00.

and denied the motion for new trial. While the facts contained in the jurors' affidavits, which facts are not challenged by appellee, clearly establish the necessary elements of a quotient verdict, there is no other evidence that would show or tend to show that the verdict was reached by the quotient method.

Quotient verdicts are universally condemned, but the question before us is not whether a quotient verdict, properly proven, should be permitted to stand, but is whether jurors can testify by affidavits or otherwise to facts and occurrences which took place in the jury room during the jury's deliberations that would establish that the quotient method was used in arriving at the verdict.

■ This precise question was previously presented to and decided by the Supreme Court in McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915). In that case the defendant filed a motion to set aside a jury verdict for $2,916.00 in favor of the plaintiff on the ground that in reaching the verdict the jury used the quotient method. The allegations contained in the motion, if true, established without question that the verdict was a quotient verdict. At the hearing on the motion one of the jurors was sworn as a witness to testify as to the manner in which the verdict was reached. The court refused to let him testify on the ground that a juror was incompetent to impeach his own verdict. The Supreme Court, while recognizing that there might be instances when testimony of jurors tending to impeach their verdict could not be excluded without "violating the plainest principles of justice," upheld the action of the trial court in refusing to permit the juror to testify and held that the attempt to establish a quotient verdict by testimony of jurors fell within what is unquestionably the general rule, i. e., that the losing party cannot, in order to secure a new trial, use the testimony of jurors to impeach their verdict. In its opinion the Court stated:

" * * * For while by statute in a few jurisdictions, and by decisions in others, the affidavit of a juror may be received to prove the misconduct of himself and his fellows, the weight of authority is that a juror cannot impeach his own verdict. *The rule is based upon controlling considerations of a public policy which in these cases chooses the lesser of two evils.* When the affidavit of a juror, as to the misconduct of himself or the other members of the jury, is made the basis of a motion for a new trial, the court must choose between redressing the injury of the private litigant and inflicting the public injury which would result if jurors were permitted to testify as to what had happened in the jury room.

"These two conflicting considerations are illustrated in the present case. *If the facts were as stated in the affidavit, the jury adopted an arbitrary and unjust method in arriving at their verdict, and the defendant ought to have had relief, if the facts could have been proved by witnesses who were competent to testify in a proceeding to set aside the verdict.* But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. *If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference.*" (Emphasis supplied) (238 U.S. 267, 268, 35 S.Ct. 784.)

Insofar as we have been able to determine the Supreme Court has made no attempt to change or relax the rule laid down in McDonald. The various public policy considerations which induced its decision remain unchanged and are fully as forceful and persuasive today as they were in 1915. We find nothing in the instant case that would warrant a departure from the holding in that case. Therefore, the trial court was right in refusing to consider the affidavits of the jurors as evidence of a quotient verdict.

The references to insurance complained of by appellant were made in the first instance by appellee's truck driver White, called as a witness by appellee, and in the second instance by Wayne Broyles, an executive of the appellee corporation, also called as a witness by appellee.

During his cross examination of the witness White, appellant's counsel, Mr. Duffy, produced a written statement apparently obtained from White by a representative of appellant's liability insurance carrier, which White admitted signing, and attempted to establish that White's oral testimony was contrary to certain portions of said statement. The pertinent questions and answers at that point were:

"MR. DUFFY:

You say you don't deny anything in here, with reference to this particular statement, 'about the time I noticed the other trailer skidding around, I jumped to the right side of the cab, to keep the steering wheel from injuring me or something'?

A Yes.

MR. DUFFY CONTINUING:

Q That was in there?

A Yes, sir.

Q You don't deny that, do you?

A I deny that I jumped about the time I saw the other trailer. I might, though, have said that, *because the insurance man come and got my statement before I got dried off.*" (Emphasis supplied)

When appellee's counsel, Mr. Pipes, had White on redirect examination, with reference to such statement, the following transpired:

"BY MR. PIPES:

Q Let me ask you a little something about this statement. You said he took that statement from you while you were still wet?

A. Yes, sir.

Q Let me show this statement to you. I show you a statement identified as Defendant Exhibit 1. Is that your signature?

A Yes, sir.

Q That is not your hand writing?

A No, sir.

Q Who wrote that statement?

A I don't know. *The insurance man,* I guess.

Q He came up and talked to you?

A Yes, sir.

Q Whose insurance man?

MR. DUFFY:

Objection

MR. PIPES:

He brought it up. I didn't. Let me read this statement." (Emphasis supplied)

There was no ruling on appellant's objection to the question, "Whose insurance man?" However, the question was never answered.

During the further re-direct examination of White by appellee's counsel, the following question was asked and the following answer was made:

"Q Let's get down to this witness. Is that Kermin Bowen?

A That is Kenneth Boden. *I guess that is the insurance man.*" (Emphasis supplied)

The Kermin Bowen or Kenneth Boden, referred to in the question and in the answer, signed White's statement as a witness.

The only objection made by appellant's counsel to any question propounded to White or any answer made by

White in which the matter of insurance was referred to was the objection to the question, "Whose insurance man?," which question, as above pointed out was never answered. Appellant made no motion for mistrial because of the matter of insurance being injected into the case during the testimony of the witness White and made no motion to strike such references to insurance or any of them. In those circumstances there was no ruling of the trial court on such references to insurance that was adverse to appellant. Therefore, such matters cannot be raised on appeal.[2] Furthermore, when counsel for appellant attempted to impeach White with the statement signed by him, appellee had the right to bring out on re-direct examination the identity and interest of the person preparing the statement and the circumstances under which it was obtained, even though in doing so it might be established that the person preparing the statement was a representative of the liability insurance carrier of appellant.[3]

■■ During the direct examination of the witness, Wayne Broyles, by appellee's counsel, Broyles, after having testified that appellee's damaged equipment, following the collision, was raised from the river and hauled to a nearby service station, was asked what was done next and he responded: "We tried to work out a settlement with the insurance company to know what to do with them." At this point appellant's counsel moved for a mistrial, which was denied. Appellant's counsel then moved to exclude the answer from the record, and the district judge granted that motion and admonished the jury to disregard the statement completely. The witness in his answer did not specify the insurance company with whom the attempt to settle was made. He could have been referring to appellee's collision insurance carrier as well as to appellant's liability insurance carrier. Where statements concerning insurance made before a jury are not certain as to whether it is plaintiff's or defendant's insurance carrier to which reference is made, or it is not clear whether the reference is to liability or collision or some other type of insurance, it is proper for the trial judge to find that there was no ineradicable impression made on the minds of the jurors, and, therefore, refuse to grant a mistrial. See Annotation, 4 A.L.R.2d 761, 819. Therefore, the trial court did not err in denying appellant's motion for mistrial. This is particularly so in view of the court's admonition to the jury to disregard the witness' reference to an insurance company, which was sufficient to eliminate any prejudice which may have resulted from such reference.

■■ Appellant's final contention is that the trial court committed reversible error when, over the objection of appellant, appellee's witness, Broyles, was permited to testify that appellee incurred expenses in the amount of $849.60 in connection with the removal of appellee's damaged equipment from Evergreen, Alabama, the site of the accident, to Houston, Texas, the location of appellee's place of business, for repairs. In its brief appellant asserts that the evidence as to such expenses was not proper in the absence of a showing that all reasonable steps were taken by appellee to minimize and mitigate the damages. However, at the trial the only objection appellant made to such evidence was: "Objection as incompetent, immaterial and irrelevant and not shown to be necessary." In the first place, the evidence was not subject to the objection made because under the law of Alabama the expense of removing a damaged vehicle from the place of collision to the place of repair is a recoverable item of damage. Mobile

---

2. Knight v. Loveman, Joseph & Loeb, Inc. (5 Cir. 1954) 217 F.2d 717, 719; Rule 46, Federal Rules of Civil Procedure, 28 U.S. C.A.

3. Mideastern Contracting Corporation v. O'Toole (2 Cir. 1932) 55 F.2d 909, 912; 21 Appleman, Insurance Law and Practice, § 12835, p. 817 (Rev.Ed. 1962). Also see the cases collected in 4 A.L.R.2d 761, 782.

Light & R. Co. v. Godik, 211 Ala. 582, 585, 100 So. 837, 840 (1924). Secondly, since the ground on which appellant attacks such evidence on appeal was not specifically stated in its objection, the error, if any, committed by the trial court in overruling such objection was waived by appellant. Employers Mutual Casualty Co. v. Johnson (5 Cir., 1953) 201 F.2d 153, 155–6.

The judgment of the district court is affirmed.