Carl C. **WOMBLE**

v.

**J. C. PENNEY COMPANY, Inc.**

Civ. A. No. 5134.

United States District Court
E. D. Tennessee, S. D.

June 19, 1969.

U. L. McDonald, Duggan & McDonald, Chattanooga, Tenn., for plaintiff.

Paul Campbell, Jr., Campbell & Campbell, Chattanooga, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

On May 2, 1969 defendant, J. C. Penney Company, Inc., filed a motion to set aside the verdict of the jury rendered on April 23, 1969 and the judgment entered thereon the following day, and to enter judgment in favor of the defendant in accordance with the motion for a directed verdict made at the close of all the evidence, and urged in support thereof twenty-three separate grounds.

On May 9, defendant filed a motion to set aside the judgment under Rule 60(b) of the Federal Rules of Civil Procedure and attached thereto the affidavits of Jurors Christine Lee, James Horace

Mathis, Donnis L. Talbert, T. D. Bennett and Mrs. G. P. Mitchell. Defendant claims that the affidavits show that the jury was guilty of misconduct in that the members of the jury discussed matters that were not in evidence, a quotient verdict was reached, the Court's instructions were disregarded and the deposition of Gardner Turner was not considered.

On May 2, attorneys for defendant filed a fourteen page brief in support of the motion for judgment notwithstanding the verdict. On May 9, a five page brief in support of this same motion was filed and on June 9 still another brief consisting of thirty-nine pages was filed.

A disturbing factor in the case is the fact that the attorneys for the defendant made post-trial inquiries of the members of the jury who made affidavits about matters discussed by them in the jury room during their deliberations preparatory to a verdict, without permission of the Court.

There has been an unwritten rule of this Court for many years that attorneys shall not make post-trial inquiries of the members of the jury as to what went on in the jury room during their deliberations without first obtaining consent of the Court. Such inquiries are not proper.

The Supreme Court early adopted the rule that the testimony of a juror would not be received to attack the verdict of the jury as being a quotient verdict. McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915). The Court noted that the rule may vary in the state courts, but in the federal courts they established the strong policy against post-trial investigation of jury deliberations. The Court stated, at page 267, 35 S.Ct. at page 784:

"* * * But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publi-

cation and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference."

In the case of Stein v. New York, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522, the Court reaffirmed its holding in *McDonald* by the following words, at page 178, 73 S.Ct. at page 1089: "Nor have the courts favored any public or private post-trial inquisition of jurors as to how they reasoned, lest it operate to intimidate, beset and harass them."

In holding that affidavits of jurors in a criminal case would not be received to impeach their verdict, the Fourth Circuit held (Rakes v. United States, 169 F.2d 739) the following with respect to inquiries to jurors:

"* * * The inviolability of the jury room from outside influence of any sort, actual or potential, is a prime necessity in the administration of justice. That unqualified rule requires that if a person, whether on the jury or not, knows of such outside influence, or an attempt at it, he must at once report his information to the court. The same rule requires that jurors are not to be harassed in any manner because of a verdict they have rendered. If jurors are conscious that they will be subjected to interrogation or searching hostile inquiry as to what occurred in the jury room and why, they are almost inescapably influenced to some extent by that anticipated annoyance. The courts will not permit that potential influence to in-

vade the jury room. He who makes studied inquiries of jurors as to what occurred there acts at his peril, lest he be held as acting in obstruction of the administration of justice. Much of such conversation and inquiry may be idle curiosity, and harmless, but a searching or pointed examination of jurors in behalf of a party to a trial is to be emphatically condemned. * * *" pp. 745, 746.

The Ninth Circuit adopted a similar rule in Northern Pacific Railway Company v. Mely, 219 F.2d 199 (1954) with the following language:

"* * * We do hold for future guidance that it is improper and unethical for lawyers, court attaches or judges in a particular case to make public the transactions in the jury room or to interview jurors to discover what was the course of deliberation of a trial jury." p. 202.

To the same effect is the case of Primm v. Continental Casualty Company, 143 F.Supp. 123 (W.D.La., 1956) which held that any inquiry which was to be made would have to be with the prior permission of the court.

This Court has prior to this time indicated that such post-trial inquiries are strongly disfavored in its memorandum in the case of Wyrosdick v. Southern Railway Company, 192 F.Supp. 810 (D.C.Tenn.) February 8, 1961. In that case, the Court said in part:

"The rule seems to be well established under federal procedure that a juror cannot testify to support or to impeach his verdict. McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300.

"The importance of protecting the secrecy of the deliberations of the jury and of protecting the jurors from inquisitions after they have rendered their verdict is necessary to the preservation of a sound jury system. Stein v. People of New York, 1953, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed.

1522. See Ramsey et al. v. United States, 1928, 27 F.2d 502 (C.A. 6).

"Extraneous actions upon the part of the jurors may be inquired into under certain circumstances. Aluminum Company of America v. Loveday, et al., 273 F.2d 499 (C.A. 6).

"The late Judge Fee wrote at length on the subject of placing 'the veil of secrecy about jury deliberations.' Northern Pacific Railway Co. v. Mely, 1954, 219 F.2d 199, 201 (C.A. 9). See Rakes v. United States, 4 Cir. 1948, 169 F.2d 739."

*Motion for Judgment Notwithstanding the Verdict and for a New Trial*

Grounds Nos. 1 through 6 relate to the evidence. The Court was of the opinion during the trial and is still of the opinion that the evidence created questions of fact for the jury and although the question of whether or not the evidence showed liability was a close one, there was sufficient evidence to support the verdict of the jury.

Ground No. 7 raises the question that the plaintiff could only recover under the Workmen's Compensation Act and that Judge Frank Wilson erred in not sustaining defendant's motion for summary judgment. In the opinion of the Court, this ground is lacking in merit.

In the alternative, the defendant moves for a new trial and in support thereof urges 23 separate grounds. The first four grounds relate to the evidence and what has been said in the disposition of the motion for judgment notwithstanding the verdict is applicable to these grounds which, in the opinion of the Court, are without merit.

■ Ground No. 5 borders on the frivolous in that it is asserted that the Court erred in not excusing the jury to hear the defendant's motion for a directed verdict, but instead in hearing the motion at the bench where the reasons for the motion could not be proper-

ly given or properly understood by the Court. The reasons for the motion were properly given and the Court fully understood them.

Grounds Nos. 6 through 11 complain of the Court's failure to give in its charge certain special requests of the defendant. The substance of the requested charges appearing in Grounds 6 and 7 was included in the charge. The matters in Grounds 8 and 9 were adequately covered in the charge on contributory negligence. There was no basis for giving the omitted portions of the requests in Grounds 10 and 11 except as covered in the portions of the requests which were given or covered generally in the charges on negligence and contributory negligence.

Ground No. 12 asserts that the Court erred in failing to hold that workmen's compensation was the only benefit which plaintiff could obtain. We concur in the ruling of Judge Wilson on this question. In the opinion of the Court, this ground is without merit.

Grounds Nos. 13 and 14 assert that the verdict of the jury was based on speculation and conjecture. We do not agree.

Grounds Nos. 15 through 18 complain of portions of the charge dealing with remote negligence. It would seem that the charge on remote negligence was as much to the benefit of defendant as to the plaintiff. The record shows that the Court asked each side whether there were any objections to the charge or any special requests other than those already submitted. Defendant's attorney raised no objection to the portions of the charge dealing with remote negligence.

Grounds Nos. 19 through 22 complain of portions of the charge. Ground 20 quotes a sentence from the charge and says that it amounted to an instruction to the jury that Penney's was negligent. Defendant's attorney unexplainedly failed to read and quote the sentence in the context of the two sentences immedi-

ately preceding. The portion of the charge quoted in Ground 22 appeared in the Court's introductory statement of the parties' contentions rather than in the portion of the charge setting out the applicable law. In the opinion of the Court, these grounds are lacking in merit.

In defendant's reply and supplemental brief, two contentions are made which require brief consideration.

First, defendant claims that plaintiff cannot recover because his boss knew of a dangerous condition in the floor whereat plaintiff fell. This question was not discussed during the trial. The Court does not recall any evidence that plaintiff's boss knew of the dangerous condition in the floor which resulted in the injuries to plaintiff. The cases relied upon by defendant dealt with danger of which the plaintiff's employer had knowledge and was inherent in the work which plaintiff was to perform, or existed in the object upon which the employee was working or an object very closely related thereto. Another differentiating factor in the cases relied upon by defendant and our case is that in those cases the danger was such that common sense and the exercise of the slightest degree of reasonable care would have required the independent contractor to warn his employees. We do not believe these cases are controlling.

Second, defendant says that it did not owe plaintiff a duty to furnish him a safe place to work since the work was shifting so fast while the building in which plaintiff fell was under construction. We do not agree.

In the case of Shell Oil Company v. Blanks, 46 Tenn.App. 539, 330 S.W. 2d 569, the Court said:

"While there are cases to the contrary, the weight of authority is to the effect that the owner or occupier of the land, with certain exceptions, is duty bound to use reasonable care to

provide a safe place in which an independent contractor and his employees can work. * * *"

Moreover, defendant owed plaintiff the duty to warn him of any danger within the knowledge of the defendant and not known to the plaintiff. Phillips v. Harvey Company, 196 Tenn. 174, 264 S. W.2d 810.

In the case of Mahoney v. United States, D.C., 220 F.Supp. 823, the following language was used:

"If the owner retains general control of his premises, an employee of an independent contractor who performs work on the premises is an invitee and the owner owes him the duty of exercising reasonable care to have the premises in a reasonably safe condition for use in a manner consistent with the purpose of the invitation. * * *"

The *Mahoney* decision, which was made by this Court, was affirmed by our Sixth Circuit. 339 F.2d 605.

It is, therefore, ordered that defendant's motions for judgment notwithstanding the verdict and for a new trial be, and same hereby are, denied.

### Motion to Set Aside Verdict of the Jury Because of Alleged Misconduct of Jury

Defendant has filed a motion to set aside the verdict and judgment rendered thereon on grounds that the jury reached a quotient verdict and that the jury was guilty of misconduct in discussing such matters as one juror's experience with a saddle-block injection, with a boy who suffered a serious back injury, and with the slickness of waxed floors in general. In support thereof, he has submitted affidavits of four jurors.

Defendant erroneously relies on Tennessee cases which hold quotient verdicts invalid. In the first place, the affidavits unanimously show that the quotient figure which was arrived at was discussed by the jury and then agreed upon to be a fair verdict. A quotient verdict is one arrived at by agreement by the jurors to be bound by the quotient in advance of figuring the amount of the quotient. Using a quotient as a point for discussion is not improper. Maher v. Isthmian Steamship Co., 253 F.2d 414 (C.A. 2, 1958); E. L. Farmer & Co. v. Hooks, 239 F.2d 547 (C.A. 10, 1956). In the second place, federal instead of state law controls in determining the effect and mode of proving jury misconduct. Gault v. Poor Sisters of St. Frances Seraph of Perpetual Adoration, Inc., 375 F.2d 539 (C.A. 6, 1967). The long-established rule in the federal courts is that the affidavits of jurors are not competent evidence to show that a quotient verdict was reached. McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300; Complete Auto Transit, Inc. v. Wayne Broyles Engineering Corp., 351 F.2d 478 (C.A. 5, 1965).

In regard to defendant's charges of improper considerations used by the jury, the general rule is that affidavits of jurors may not be received to impeach the verdict. McDonald v. Pless, supra. The courts have found an exception to the general rule when some extraneous influence is shown to have reached the jury. Stiles v. Lawrie, 211 F.2d 188 (C.A. 6, 1954). Within the category of extraneous influences are the following: jury use of incompetent documentary evidence not introduced at trial, Stiles v. Lawrie, supra; juror taking a private view of the property which was allegedly damaged and reporting to the remainder of the jury. Aluminum Company of America v. Loveday, 273 F. 2d 499 (C.A. 6, 1959); improper communication with a marshal, Thomas v. Peerless Mattress Co., 284 F.2d 721 (C. A. 4, 1960); or any corruption of the jury by the parties.

There are no elements of extraneous influences shown in the juror's affidavits.

Defendant contends that the following comments in the jury room are such misconduct as would render the verdict void: (1) Juror Lee's experience with waxed floors; (2) Mrs. Lee's observation that plaintiff's failure to see the wax may have been due to a glare on his glasses; (3) Mrs. Lee telling about a child who had disastrous results from a spinal tap; (4) other comments by jurors about personal experiences involving back injury. Such comments as these do not amount to evidence supplementary to that introduced during the trial, but are statements of the general experience background by which the jury is to decide whether to credit the plaintiff's or defendant's theories. In deciding whether the defendant used reasonable care in warning of waxed floors, whether plaintiff should have seen the danger, and whether plaintiff's injuries are as serious as he says, the jury cannot be said to have acted improperly in bringing to bear the common and ordinary facts which jurors are supposed to possess. Gault v. Poor Sisters of St. Francis Seraph of Perpetual Adoration, Inc., supra.

If the jury's conduct in this case were sufficient to void a verdict, few verdicts could survive post-trial inquiry. Defendant's contentions illustrate the wisdom of the long-standing rule that courts will not inquire into the reasoning or mental processes by which a jury reaches its verdict. Gault v. Poor Sisters of St. Frances Seraph of Perpetual Adoration, Inc., supra; Rotondo v. Isthmian Steamship Co., 243 F. 2d 581 (C.A. 2, 1957); Vol. 6A Moore's Federal Practice, pp. 3810, 3811 and 3812.

It is further ordered that defendant's motion to set aside the verdict and the judgment entered thereon be, and same hereby is, denied.

In the light of what has been said, it is not deemed necessary to act on plaintiff's motion to strike. Plaintiff's attorney indicated at the oral hearing on the motion that he did not desire to interview the jurors who made the affidavits and this disposes of his alternative motion.